IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

LIMA CHARLIE SIERRA LLC                                          PLAINTIFF

vs.                          CASE NO. 4:21CV000303 – JM

XL SPECIALTY INSURANCE COMPANY                          DEFENDANT

<u>ORDER</u>

Plaintiff brought this declaratory judgment and breach of contract action to recover under its insurance contract with Defendant for burn damage sustained to its 2007 Hawker Beechcraft Premier IA while it was at a service center for inspections and maintenance. The case was tried to a jury, and a verdict was returned in favor Plaintiff Lima Charlie Sierra, LLC ("LCS") in the amount of $1,225,000 against Defendant XL Specialty Insurance Company ("XL").

Pending are two post-trial motions. Plaintiff Lima Charlie Sierra, LLC ("LCS") has filed motions for attorney's fees, costs and prejudgment interest (ECF No. 142 and 160); and Defendant XL Specialty Insurance Company ("XL") has renewed its motion for judgment as a matter of law with alternative motions to reduce the judgment, for remittitur, or for a new trial (ECF No. 148). Both are ripe. Fist the Court will address the judgment as a matter of law.

<u>Defendant's Motion for Judgment as a Matter of Law</u>

A court may direct a judgment as a matter of law if it finds that "a reasonable jury [did] not have a legally sufficient evidentiary basis" to find for the prevailing party on an issue. Fed. R. Civ. P. 50.  "In reviewing the sufficiency of the evidence to support the jury's verdict, we interpret the record in a light most favorable to the prevailing party, affirming unless no reasonable juror could have reached the same conclusion." *Structural Polymer Grp., Ltd. v. Zoltek Corp.*, 543 F.3d 987, 991 (8th Cir. 2008).

XL renews two of the motions for judgment of law it made at trial.  One, XL argues that LCS failed to introduce any competent evidence establishing the aircraft's post-incident market value after the burn damage was repaired.  Two, XL argues that LCS failed to introduce any evidence of the diminution in value that was caused by the burn damage as opposed to diminution in value caused by depreciation. These arguments can be addressed together.

XL argues that to prove its diminution in value claim, LCS was required to prove the following three elements:  the aircraft's fair market value (FMV) before the incident, its FMV after the burn damage was repaired, and the difference in these figures specifically caused by the fire damage."  XL points to the Court's Jury Instruction No. 10, which stated: "Physical damage to the aircraft under the policy includes diminution in value as a result of fire damage. Diminution in value is the difference in the fair market value of the Aircraft before it sustained burn damage on November 21, 2019, and the fair market value of the Aircraft after the burn damage was repaired."(ECF No. 135 at 11). The jury was further instructed  that FMV was "the price that the aircraft would bring on the open market in a sale between a seller who is willing to sell and a buyer who is willing and able to buy after a reasonable opportunity for negotiations." *Id*.

As for the FMV of the aircraft before the incident, Larry Crain, Sr. testified for LCS that before the burn damage, the FMV of the aircraft was between $1,900.000  and $2,500,000.  XL challenged the competence of Mr. Crain's testimony and filed a motion in limine to exclude it (ECF No. 114).  Finding that a property owner is qualified to testify as to the value of his property, the Court allowed the testimony.  XL also conceded this issue in a telephone conference held on October 26, 2022.  (ECF 156-1, p. 46).

XL argues that LCS failed to introduce evidence to establish the FMV of the aircraft after the burn damage was repaired.  It argues that the sale to Larry Crain, Jr. did not supply the evidence the jury needed to make its damage calculation.  XL is correct that the sale was negotiated before the burn damage was repaired.  However, LCS submitted evidence from Larry Crain, Jr., the principal of Charlie Romeo LLC, that his company purchased the aircraft for $1,000,000 on the agreement that LCS would pay for all repairs necessary to make the aircraft airworthy. Mr. Crain, Sr. testified that he paid approximately $325,000 to "do the things that need to be done" to repair the aircraft.  (ECF No. 150-3 at 44, 45), and it is not disputed that these repairs related to the chafing and corrosion damage and were unrelated to the fire damage. It was reasonable for the jury to conclude that the FMV of the aircraft after it was damaged by the fire was $675,000, which was the price it brought on the open market after deducting the cost of repairs that were unrelated to the burn damage.  Likewise, a reasonable juror could have concluded that the aircraft was worth the top of the range given by Mr. Crain, Sr.—$2,225,000— less the $325,000 for preexisting damage, to arrive at the diminution in value caused by the fire damage.

XL also continues to argue that the sale from the father's LLC to the son's LLC cannot be considered in determining FMV because the sale was not on the open market.   However, Mr. Crain Sr. testified that he received five offers for the aircraft, that his son's was the highest, and that they had negotiated. The jury was aware of the relationship between the two men and heard them both testify. The jury reasonably found that this million-dollar sale, less the $325,000 to repair non-fire damage as negotiated, was sufficient to establish "the price that the aircraft would bring on the open market in a sale between a seller who is willing to sell and a buyer who is

3

willing and able to buy after a reasonable opportunity for negotiations."  Defendant has failed to establish that no reasonable juror could have reached this conclusion.

Alternatively, XL asks the Court to reduce the judgment awarded by the jury based on what it argues is the "maximum amount supported by the evidence."  (ECF No. 151 at 19).  XL relies on the opinion in *C.L. Maddox, Inc. v. Benham Grp., Inc.*, 88 F.3d 592, 603 (8th Cir. 1996) to argue that if the court denies its renewed motion for judgment as a matter of law, the Court has the authority to reduce the amount of the jury's verdict "[w]hen it is apparent that certain identifiable sums included in the verdict should not have been there."  *Id.* at 603.  However, as the Eighth Circuit stated in that opinion, the relief requested was "akin to a partial judgment as a matter of law on that one claim" and, as XL acknowledges (ECF No. 151 at 20), the same standard applies.  Therefore, for the same reasons that the Court denied XL's renewed motion for judgment as a matter of law, the motion to reduce the amount of the award pursuant to *C.L. Maddox, Inc.* is denied.

As a further alternative, XL seeks a remittitur or the grant of a new trial. The Eighth Circuit has held that a district court should order remittitur "when the verdict so grossly excessive as to shock the conscience of the court" and there is "plain injustice" or a "monstrous" or "shocking" result. *Eich v. Bd. of Regents for Cent. Missouri State Univ.*, 350 F.3d 752, 763 (8th Cir. 2003) (internal citations omitted).  A district court has the discretion to grant a new trial pursuant to Rule 59 if it determines that "it is necessary to prevent a miscarriage of justice." *Maxfield v. Cintas Corp., No. 2,* 563 F.3d 691, 694 (8th Cir.2009).  For the reasons the Court is denying XL's renewed motions for judgment as a matter of law, its alternative requests for relief are also denied.

Plaintiff's Motion for Attorney Fees, Costs, and Prejudgment Interest

Following the jury verdict, LCS filed a petition for an award of the 12% statutory penalty pursuant to Ark. Code Ann. § 23-79-208, attorneys' fees under both § 23-79-208 and -209, and pre-judgment interest.  It has also filed a supplemental petition for attorneys' fees (ECF No. 160) for time spent after the first motion was filed.

Ark Code Ann. § 23-79-208 allows an insured to recover a penalty of "12% upon the amount of the loss" if an insurer fails to pay the losses "within the time specified in the policy after demand is made." Subsection (d)(1) provides that recovery of the 12% penalty shall not be defeated if an insured recovers "less than the amount demanded  . . . if the amount recovered for the loss is within twenty percent (20%) of the amount demanded or which is sought in the suit." Ark Code Ann. § 23-79-208(d)(1).  Stated another way, an insured must receive at least 80% of his demand to recover the penalty.  With the jury's award of $1,225,000, LCS's demand would have to have been be no more than $1,531,250 to recover the penalty.

The parties dispute whether the amount awarded by the jury was within 20% of the amount demanded because they disagree on "the amount demanded or which is sought in the suit." In a demand letter sent before the lawsuit was filed, LCS offered to resolve its claim for $1,798.440.85. (ECF No. 32 at 73).   In the breach of contract portion of its complaint, LCS sought "damages in an amount equal to the insured value of the Aircraft minus the sales price," which would be $2,570,000 minus $675,000, or $1,895,000. (ECF No. 2 at 7). (ECF No. 32 at 73).  No amended complaint was filed reducing this amount.  In fact, LCS claimed in closing argument to the jury that "the figure for the physical damages based on the evidence in this case is $1,825,747.16." (ECF No. 144-1 at 8).  It also asked the jury for an additional $70,918.46 for maintenance and insurance expenses. (ECF No. 144-1 at 13-14).  The amounts that were sought

5

by LCS are not within 20% of the amount awarded. Therefore, LCS is not entitled to an award of attorney's fees or the 12% penalty under Ark. Code Ann. § 23-79-208.

However, the Court finds that LCS is entitled to recover attorneys' fees pursuant to Ark. Code Ann. § 23–79–209. The statute states, in relevant part:

> (a) <u>In all suits in which the judgment or decree of a court is against a</u> life, property, accident and health, or <u>liability insurance company,</u> either in a suit by it to cancel or lapse a policy ... or <u>in a suit for a declaratory judgment under the policy,</u> or in a suit by the holder of the policy to require the company to reinstate the policy, <u>the company shall also be liable to pay the holder of the policy all reasonable attorney's fees for the defense or prosecution of the suit, as the case may be</u>.

(Emphasis added). XL argues that the statute only applies to declaratory judgments brought by insurers. While the sentence structure of this section does prompt a second and even third look, the Court finds that the statute allows an insured to also recover in instances when it initiates and prevails in a declaratory judgment action. *See Cooper v. Gen. Am. Life Ins. Co.*, 827 F.3d 729, 731–32 (8th Cir. 2016) ("[O]ne situation where the statute applies is where <u>a party</u> is seeking declaratory judgment to 'determine the obligations of the insurer under a policy of insurance.'") (quoting *S. Farm Bureau Cas. Ins. Co. v. Watkins*, 386 S.W.3d 6, 10 (Ark. Ct. App. 2011) (emphasis added); *see also* 1 Arkansas Law Of Damages § 11:5 (Howard W. Brill and Christian H. Brill, November 2022 Update) ("Under [Ark. Code Ann. § 23-79-209], attorney fees are available to the insured in successful suits to cancel, modify, or reinstate insurance policies or in declaratory judgment actions.").

As to the amount of attorneys' fees LCS is entitled to, the Court agrees with XL that only the fees related to the declaratory judgment claim are recoverable under Ark. Code Ann. § 23–79–209. This claim was resolved on June 9, 2021, when the Court granted LCS's partial motion for judgment on the pleadings as to the claim for declaratory judgment. (ECF No. 14). LCS is

not entitled to an award of attorney's fees incurred in pursuit of its breach of contract under

either  Ark. Code Ann. § 23–79–209 or, as discussed above, -208.  The Court is prepared to

award attorneys' fees of $21,560, which covers the time through June 9, 2021, and costs of

$9,195.50.  LCS may choose to file a supplemental brief if it believes it is entitled to additional

fees related to the declaratory judgment claim (see briefing schedule below).

  Finally, LCS seeks prejudgment interest pursuant to Ark. Code Ann. § 16-65-114.

However, prejudgment interest is only allowable "where the amount of damages is definitely

ascertainable by mathematical computation, or if the evidence furnishes data that makes it

possible to compute the amount without reliance on opinion or discretion." *Walther v. Wilson*,

2020 Ark. 194, 20, 600 S.W.3d 554, 566 (2020) (citing *Ray & Sons Masonry v. United States

Fidelity & Guaranty Co.*, 114 S.W.3d 189 (2003) and *Woodline Motor Freight, Inc. v. Troutman

Oil Co.*, 938 S.W.2d 565 (1997)).  It is high bar that requires the existence of a method "for

fixing the <u>exact</u> <u>value</u> of a cause of action at the time of the occurrence of the event that gives

rise to the cause of action." *Dugal Logging, Inc. v. Arkansas Pulpwood Co.*, 988 S.W.2d 25

(1999) (emphasis added).  As LCS admits, it "requested relief between $1,295,918 and

$1,895,918." (ECF No. 143 at 8), and it was ultimately awarded $1,225,000.  This case did not

present evidence from which the damages could be fixed by exact value or from mathematical

computation free from opinion and discretion.  LCS's motion for an award of prejudgment

interest is denied.

  THEREFORE,

  1. Defendant's Renewed Motions for Judgment as a Matter of Law and Alternative

Motions to Reduce the Judgment, for Remittitur, and/or for a New Trial (ECF No. 148), are

DENIED;

2.      Plaintiff's Petition for Statutory Penalty, Attorneys' Fees, Costs and Prejudgment Interest (ECF No. 142) is DENIED in part and GRANTED in part, as stated above.  Plaintiff's Supplemental Motion for Attorneys' Fees (ECF No. 160) is DENIED

3.      If Plaintiff chooses to file a supplemental brief to support its claim for attorneys' fees (limited to the declaratory judgment claim), it must do so by June 7, 2023.  Defendant will have seven days to file a response.  If no further briefing is submitted, the Court will enter an order awarding LCS $21,560 in attorneys' fees and costs of $9,195.50.

4.      Defendant's Motion to Extend Automatic Stay on Execution and Enforcement of Judgment During the Pendency of Post-Judgment Motions (ECF No. 154), which Plaintiff informally agreed to and honored, is DENIED at this time.

IT IS SO ORDERED this 23rd day of May, 2023.

_____
THE HONORABLE JAMES M. MOODY JR.
UNITED STATES DISTRICT JUDGE